## In re Anonymous No. 88 D.B. 86

Disciplinary Board Docket no. 88 D.B. 86.

To the Honorable Chief Justice and Justices of the Supreme Court:

BROWN, *Member,* September 25, 1987 — Pursuant to the Pennsylvania Rules of Disciplinary Enforcement and the order of the Supreme Court of Pennsylvania, the following report is hereby filed by the Disciplinary Board of the Supreme Court.

### HISTORY OF PROCEEDINGS

By order dated May 21, 1987, His Honor, Robert N.C. Nix Jr., Chief Justice of the Commonwealth of Pennsylvania, transferred respondent, [ ], to "inactive status pursuant to Rule 301(e) Pa.R.D.E. for an indefinite period and until further order of the court." The Disciplinary Board was directed to appoint a qualified medical expert to examine respondent and report his/her findings and diagnosis to the board on the issue of whether or not respondent is suffering from a disabling condition which incapacitates him from continuing the practice of law and/or renders him incapable of preparing an adequate defense to the allegations of professional misconduct pending against him in disciplinary proceedings docketed at 88 D.B. 86. The Board was directed to prepare a report and recommendation to

the court following receipt of the examining physician's report. Attached hereto as exhibit "A" is a copy of the court's order.

The chairman of the Disciplinary Board, James C. Schwartzman, Esq., by order dated June 5, 1987, appointed [A], [   ], as the examining physician and appointed the undersigned as reviewing member for the board. See exhibit "B" attached hereto.

[A] examined respondent and submitted a report dated June 24, 1987 which, inter alia, concluded that he did "not find any substantiation for the respondent's claim that his chronic medical problems preclude him from preparing an adequate defense to allegation." He also did "not find him disabled to perform part-time sedentary work." However, he did note that his conclusions were predicated upon an incomplete data base as records relating to respondent's cardiac condition were not available to him. See exhibit "C" attached hereto. Counsel was given the opportunity to review the report and file appropriate motions. Counsel for respondent replied by noting that on June 30, 1987, respondent was confined to the intensive care unit of [B] Hospital, [   ] for a heart condition and had been confined there on prior occasions. Inasmuch as the records of these confinements were not made available to [A], respondent requested a hearing.

By agreement of counsel, the reviewing member entered an order directing respondent's counsel to secure the subsequent and current records of respondent's hospitalization and any other records which might relate upon the issue and submit same to [A]. Counsel for respondent promptly complied and [A] issued report in which he concluded that because of respondent's precarious cardiac condition, respondent is currently medically unable to

participate in his defense and is precluded from the practice of law. See exhibit "D" attached hereto.

This information was shared with all counsel and by letter dated August 12, 1987, Office of Disciplinary Counsel concurred that "the Board should report to the court, in response to its May 21, 1987 order, that [respondent]: (1) is incapacitated from continuing to practice law by reason of illness; and (2) should be continued on inactive status until further order of the court." Attached as exhibit "E" is Disciplinary Counsel's letter of concurrence.

## RECOMMENDATION

By virtue of the foregoing, it is respectfully submitted that the board recommends that the court continue respondent on inactive status until further order of court.

## ORDER

And now, March 31, 1988, upon consideration of the report and recommendation of the Disciplinary Board dated September 25, 1987, it is hereby ordered that respondent, [   ], shall remain on inactive status pursuant to Rule 301(e), Pa.R.D.E., for an indefinite period and until further order of this court. The disciplinary proceedings (file no. [   ] ) against the respondent, docketed at no. 88 D.B. 86, are to be held in abeyance, except for the perpetuation of testimony.

*Exhibit A*

## ORDER

NIX, *Chief Justice* — And now, May 21, 1987, upon consideration of the certificate of the respon-

dent, [    ], that he is suffering from disabling conditions which incapacitate him from continuing the practice of law, and make it impossible for him to prepare an adequate defense to allegations of professional misconduct brought against him in connection with Disciplinary Board file [    ], it is hereby ordered that:

(1) Respondent, [    ], is immediately transferred to inactive status pursuant to Rule 301(e), Pa.R.D.E. for an indefinite period and until further order of this court.

(2) The Disciplinary Board appoint a qualified medical expert or experts as the board considers necessary to examine the respondent and report their findings and diagnoses to the board.

(3) The respondent submit himself to the appointed medical expert or experts at the times and places designated by said experts or the Disciplinary Board for an examination or examinations to provide a basis for determining whether respondent is incapacitated from continuing to practice law by reason of mental infirmity or illness or because of addiction to drugs or intoxicants.

(4) The board shall prepare a report and recommendation to the court following examination.

(5) The disciplinary proceedings on the petition for discipline against the respondent docketed at 88 D.B. 86 are to be held in abeyance pending further definitive action pursuant to this order, except for the perpetuation of testimony.

*Exhibit B*

ORDER

And now, June 5, 1987, pursuant to the order of the Supreme Court of Pennsylvania dated May 21, 1987:

(A) [A], M.D., [   ], is hereby appointed to examine [respondent] to provide an up-to-date evaluation of respondent's fitness to practice law. Such evaluation should consider whether the respondent "is incapacitated from continuing the practice of law by reason of mental infirmity or illness or because of addiction to drugs or intoxicants. . ." (Rule 301(b), Pa.R.D.E.) and ability to prepare an adequate defense to charges contained in Disciplinary Board file no. [   ]. A report of his findings shall be submitted by July 1, 1987 to Byrd R. Brown, Esq., 515 Court Place, Pittsburgh, Pennsylvania 15219, a member of the Disciplinary Board, appointed as a reviewing member for the purpose of initially receiving such report.

(B) [Respondent] is directed to make himself available for examination by [A] at his office at 1:30 p.m. on June 23, 1987 and on such other dates as required by [A].

*Exhibit C*

Re: [Respondent]

To Whom It May Concern:

Enclosed is my detailed history and physical examination of [respondent] at your request. Although he has several chronic medical conditions, I feel he is quite capable of preparing an adequate defense, and I see no cause for the designation of disability for his sedentary type work. He currently attends his office between nine and 16 hours per week and continues to conduct a limited practice, despite his medical conditions.

I do not find any substantiation for the respondent's claim that his chronic medical problems preclude him from preparing an adequate defense to

allegation. I also do not find him disabled to perform part-time sedentary work.

Sincerely, [A], M.D.

General History:

[Respondent]

Age: 78

Drugs: Aldomet; Pilocar Eyedrops

*Chief Complaint:*

[Respondent] is a 78-year-old lawyer referred to my office by the Disciplinary Board of the Supreme Court of Pennsylvania for evaluation of his medical condition in light of his claim of disability to work, and to adequately prepare defense against allegations brought before the Disciplinary Board.

[Respondent's] official statement of disability states that his physical condition makes it impossible to prepare adequate defense and asserts that he is incapacitated for the practice of law. Statements from his prior physicians include congestive heart failure, previous severe cervical radiculopathy with residual pain and muscle atrophy and weakness. The letter from Doctor [C] also includes the mention of frequent necessity for narcotics required by constant pain and that the pain and narcotics impaired his ability to concentrate. The statement by Doctor [D] alludes to cardiac disability primarily. There are no records available to me on the particulars of his cardiac condition, specifically no discharge summary or records from his [B] Hospital admission one year ago during which he had treatment for congestive heart failure and a pacemaker. There are physicians' letters substantiating that he has had at least two prior myocardial infarctions (a letter from his neurosurgeon) one of which occurred immediately after right hemicolectomy for bowel cancer in 1986. He also had an in-hospital consultation in November

of 1985 which suggested angina precipitated by the patient's abrupt discontinuation of beta blockers.

When asked at this interview what prevents him from preparing a defense and from continuing his practice, he states that he cannot sit for long periods because of agitation and loosing [sic] his trend of thought and because of decreased memory. He has noted increased forgetfulness in recent months and years. Secondly, he states he is in a state of constant suffering with pains in several areas including the calves, feet, shoulders, and hands, as well as frequent headaches. He also states that his ambulation is limited to about one block on the level at which point he becomes short of breath. He has occasional left lower interior chest discomfort which is promptly relieved with nitroglycerin and claims to be taking up to 10 nitroglycerin per week. It should be noted that he is not currently taking an anti-anginal medications on a regular basis, and this condition is somewhat incongruous.

It should be noted that despite his several medical problems, and considering his limited mobility, he spends approximately three to four days per week in the office for three to four hours at a time for a total of nine to 16 hours per week on the average. He states "I don't get much work done." His last appearance in court was April of 1987. He states that he is only able to handle the simplest of cases and work at his job but does continue to run a limited practice.

In his activities of daily living he is independent in ambulation and in self care for the most part. He states that his wife must help him button and unbutton his shirts at certain times because of diminished fine motor control in his hands. He states that his writing has somewhat deteriorated but that his handwriting is still legible.

Although he is on Aldomet three times daily and Halcion for sleep, he states that he discontinued Fiorinal several weeks ago but is very vague as to the date. At one time he said he took up to three Fiorinal per day and later he stated that his same use of Fiorinal was very occasional. He denied any narcotic analgesic need whatsoever and denied ever taking any in the past. When asked about the information contained in Doctor [C's] letter of his frequent narcotic analgesic requirement, he states that he may had some of these in the past with a Codeine-containing compound but that this recollection is very vague and he claims to have had none of these kinds of medications in the past year or so.

The electrocardiogram shows biventricular hypertrophy, normal sinus rhythm, and left axis deviation.

*Problems:*

(1) Cervical radiculopathy with muscle atrophy right hand.

(2) History of CHF, currently well compensated, not on medications.

(3) Hypertension — Treated

(4) Glaucoma — Treated

(5) Generalized bradykinegia. This may be his slowness of movement which was, maybe due to his advanced age and generalized weakness and frailty. I don't see any findings for Parkinson's disease. There may be also an element of secondary gain.

(7) [sic] Incomplete data base, especially the cardiac records.

Although [respondent] has several serious medical problems, he is currently well compensated and stable. He has been well compensated and stable for the past year. I do not have any hard findings for dementia or overt psychiatric disease. He does have

some somatic symptoms without unidentifiable organic pathology, especially referable to the legs. It is not clear to me whether his limitation of exertion is due to cardiac or pulmonary condition, but his cardiogram is grossly abnormal and it is quite conceivable that he is limited by chronic congestive heart failure. It is quite curious to me that he is not on any medications for congestive heart failure or angina even though his medical records state that he had both, and that he has been under good medical care.

Despite his medical illnesses, he continues to be able to conduct a limited law practice in some fashion. He seems mentally clear and is able to perform adequate abstract thought processes. His responses and judgments seem intact as far as can be ascertained during this interview. There are several inconsistencies in his medication history, the most glaring of which is his adamant denial of narcotic analgesics and one physician's mention of chronic need of these medications.

Despite the patients stable chronic illnesses, he is functionally able to take a taxicab and go to his office to practice law in some limited fashion nine to 16 hours per week. In my judgment, he is fully capable and able to respond to the allegations before the Disciplinary Board. His current mental and physical state does not preclude him from preparing an adequate defense.

Because he denies any narcotic and because he claims to have discontinued chronic use of his Fiorinal, I do not have any reason to substantiate his claim of disability. His own continuation and conduct of limited law practice up to the current time seems to make his current claim of disability incred-

ible and closely conjoined to the inappropriate claim of inability to prepare defense against charges.

*Exhibit D*

Re: [Respondent]

To Whom It May Concern:

I have reviewed the chart from [respondent's] [B] Hospital admission September 20, 1986 and his recent readmission June 30, 1987. This clarifies that he has hypertensive cardiovascular disease including a prior episode of acute pulmonary edema and well-documented second degree (Mobitz type II) AV block requiring a pacemaker which was inserted September 22, 1986.

He had been well compensated clinically during the past several months, but on June 30 he became more short of breath due to fluid accumulation in the lungs from his chronic congestive heart failure.

Even though he improved up to his time of discharge July 6, 1987, his heart size remained enlarged and it is more clear now that he is in a more precarious cardiac situation than could be previously appreciated without the benefit of these records.

I, of course, have not had the opportunity to re-examine him, but certainly, as stated by Dr. [D], that as of July 7, 1987, he was in a medical condition which would preclude his continued legal practice. It is certainly true that within the next month, he should not return to work or to any stressful situations as these could precipitate yet another episode of heart failure. I would also judge from his records that he is currently medically unable to participate in

his preparation of a legal defense in response to the allegations pending against him at the Disciplinary Board.

It is impossible to say whether he will continue to be unable to prepare a defense in the future, but I would say that these activities are certainly precluded within the next month at least.

Sincerely,

[A], M.D.

*Exhibit E*

Dear Mr. [ ]:

[A's] report of July 27 is based upon his June 24 examination of [respondent], and review of records of the hospitalization in September of 1986, as well as the one beginning June 30, 1987, without subsequent examination by [A] since that last confinement.

[A's] current assessment is that, because of his "precarious cardiac condition," [respondent] is currently "medically unable" to participate in his defense, and is precluded from practice, in that he "should not return to work or to any stressful situation," *"within the next month."*

Such assessment by the board-appointed examiner appears reasonably to confirm that [respondent] is currently "incapacitated from continuing to practice law by reason of . . . illness," which was the issue raised by the Supreme Court order of May 21, 1987. Further, it also answers, at least for the time being, the additional question as to his ability to "prepare an adequate defense," which issue was included in the board order of June 5.

Accordingly, it appears that the board should report to the court, in response to its May 21, 1987

order, that [respondent] (1) is incapacitated from continuing to practice law by reason of illness and (2) should be continued on inactive status until further order of the court.

Respectfully submitted,

[E], Assistant Disciplinary Counsel